UNITED STATES of America,
Plaintiff-Appellee,

v.

David BOOKER, Defendant-Appellant.

No. 72–1653.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1973.

Decided June 19, 1973.

Thomas H. Ramsey, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Terry M. Gordon, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

STEVENS, Circuit Judge.

A jury composed of five black and seven white persons found defendant, a black, guilty of violating 21 U.S. C. § 841(a)(1). In his conduct of the voir dire, the trial judge committed error by refusing to interrogate prospective jurors on the subject of possible racial prejudice. The government contends that the error was harmless because the evidence of guilt is overwhelming and five of the jurors were black. We disagree.

In Chase v. United States, 468 F.2d 141, 147 (7th Cir. 1972), we held that the possibility of prejudice from a relatively minor omission from the voir dire did not justify a new trial because the evidence of guilt was overwhelming. For purposes of decision, we accept the government's appraisal of the evidence in this case, but, nevertheless, we cannot characterize the omission as minor. Indeed, under settled law, it is of critical importance.

In Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054, a black

defendant charged with the murder of a white policeman requested that the court ask prospective jurors whether they entertained any racial prejudice. The Supreme Court reversed the judgment of conviction because the request was refused. While the facts of that case presented a greater risk that racial prejudice would actually affect the deliberations of the jury than does the record before us, the underlying rationale of Chief Justice Hughes' opinion for the Court is applicable. He stated, in part:

> "If in fact, sharing the general sentiment, they were found to be impartial, no harm would be done in permitting the question but if any one of them was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit.

> \*    \*    \*    \*    \*    \*

> "The argument is advanced on behalf of the government that it would be detrimental to the administration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute." 283 U.S. at 314–315, 51 S.Ct. at 473.

■ In United States v. Robinson, 466 F.2d 780 (7th Cir. 1972), this court held that Aldridge is not limited to cases involving a black defendant and a white victim. See also United States v. Gore, 435 F.2d 1110 (4th Cir. 1970). We think it equally plain that the presence of some black jurors does not cure the error committed during the voir dire. For if even one member of the jury harbors racial prejudice against the accused,

his right to trial by an impartial jury is impaired.

In Aldridge, as here, the error was committed in a federal court. For that reason reversal need not rest on a constitutional ground. It is nevertheless significant that a unanimous Supreme Court recently reversed a state judgment because the trial judge refused to ask prospective jurors about possible prejudice against black people. Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46. There was perhaps a greater risk of prejudice against Ham because of his participation in civil rights activities than against the appellant in this case, but the Court's appraisal of the error as violative of the "essential demands of fairness" protected by the Due Process Clause, 409 U.S. at 526, 93 S.Ct. 848, persuades us that on direct review of a federal conviction we should reverse without attempting to appraise the actual likelihood of prejudice to this appellant.

■■ Two other points merit brief comment. The court refused defendant's motion that an informer be called as the court's witness and, after the defendant then called the informer as his own witness, the court also refused to instruct the jury that the testimony of an informer should be weighed with special care. We agree with the government that in this case neither refusal was reversible error. In view of the informer's relationship with the prosecution, however, and the more important consideration that technical rules based on which side calls a witness are clearly less significant than fundamental requirements of fairness, see Chambers v. Mississippi, 410 U.S. 284, 295–298, 93 S.Ct. 1038, 1045, 1047, 35 L.Ed.2d 297 (1973), we think the district judge would have been well advised either to call the informer as a court's witness or at least to give the jury an appropriate cautionary instruction.[1]

1. It is, of course, essential that the judge tailor his instruction to the circumstances of the case and avoid the error of using a standard instruction that is inappropriate, for example, when a type of witness usually called by one side is called by the other or by the court. Cf. Cool v. United States, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335.

Finally, we find no merit in defendant's argument that the evidence established entrapment as a matter of law.

Reversed and remanded.