## UNITED STATES of America
## v.
## Percy FLOYD, Appellant

### Nos. 74–1010, 74–1011.

United States Court of Appeals, District of Columbia Circuit.

May 13, 1976.

On Suggestion for Rehearing *En Banc* (Criminal 2251–71; 445–72).

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

### ORDER

PER CURIAM.

Appellant's Suggestion that this Court Rehear the Case En Banc, 173 U.S.App.D. C. 95, 522 F.2d 1310, having been transmitted to the full Court and there not being a majority of the Judges in regular active service in favor of having these cases reheard *en banc,* it is

ORDERED by the Court, *en banc,* that the aforesaid suggestion that this Court rehearing the case *en banc,* treated as a suggestion to rehear both appeal Nos. 74–1010 and 74–1011 *en banc,* is denied.

Statement of Chief Judge BAZELON with whom Circuit Judge ROBINSON joins, as to why he would grant rehearing en banc in No. 74–1011.

Judge Justice's excellent dissent persuasively sets forth the reasons why the division's opinion is unsupportable on either

the law or the facts. *See United States v. Diggs*, 173 U.S.App.D.C. 95, 522 F.2d 1310, 1324–32 (1975). With respect to the trial judge's refusal to permit appellant to voir dire prospective jurors concerning racial prejudice, the division has misstated the applicable law as developed by the Supreme Court and this court. And with respect to the constitutionality of the police officers' initial stop or arrest, the division has misleadingly stated the facts.[1] On both counts I believe rehearing is warranted. While I have nothing to add to Judge Justice's treatment of the Fourth Amendment issue, developments subsequent to the division's decision require further comment placing the division's aberrational holding on the voir dire issue in proper perspective.

In 1930 this court held that trial judges were not required to permit Negro defendants to ask prospective jurors whether they entertained racial prejudice that would disable them from rendering an impartial verdict.[2] In *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), that holding was reversed by a nearly unanimous Supreme Court. Writing for the Court, Chief Justice Hughes stated that "the essential demands of fairness" require posing the question, *id.* at 310, 51 S.Ct. at 471, 75 L.Ed. at 1055, since even in the District of Columbia, the "possibility of prejudice" was not "so remote as to justify the risk in forbidding the inquiry." *Id.* at 314, 51 S.Ct. at 473, 75 L.Ed. at 1058.

Thirty-five years later, in *King v. United States*, 124 U.S.App.D.C. 138, 362 F.2d 968 (1968), we were invited to hold that *Aldridge* required that defendants be permitted to inquire into racial prejudice only in the aggravating facts of that case, in which a Negro defendant was tried by a white judge and jury and was sentenced to death for murdering a white police officer. We refused that invitation. Instead, relying on a First Circuit decision which had considered the same question in the context of a conviction for making false statements to a government agency,[3] we held that the *Aldridge* rule "is not limited to capital crimes *or even to crimes of violence.*" *Id.* at 969. As we later observed in *United States v. Robinson*, 154 U.S.App.D.C. 265, 475 F.2d 376, 381 (1973), racial prejudice is one of those "recognized classes" of prejudice for which "there is a constant need for a searching voir dire examination." *King*, in turn, became a leading case, and was followed, implicitly or explicitly, in five other circuits, regardless of the nature of the

---

1. The issue here is *not*, as the division implies, whether it was a "reasonable precaution" for the officers to draw their guns when approaching the car, nor is it whether, after stopping the car and looking into it, probable cause existed to justify an arrest. Rather, the sole issue raised by appellant is whether the officers had a *reasonably based* suspicion which would justify the initial stop of the vehicle. *See, e. g., United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). That question can be resolved only by determining what the officers knew when they made the stop. The division not only failed to do that, but managed to obscure the question by lumping together information developed prior to the stop with information developed afterwards.

   Careful examination of the record would disclose that all the officers knew at the time of the stop was: (1) several weeks earlier Diggs had been arrested for a bank robbery in Washington (Tr. at 11); (2) two weeks earlier Diggs had been seen on one occasion with Floyd (Tr. at 54) who had been convicted of homicide in connection with a bank robbery in 1968, and whom one agent suspected had committed other robberies in 1968 (Tr. at 62); (3) Diggs did not fit the description of either robber (Tr. at 98); (4) the FBI radio report described the second robber as 5'8", medium complexion, medium build (Tr. at 50), a description that more-or-less fit Floyd (Tr. at 51, 82); (5) the Metropolitan Police radio twice described the second robber as 6' and thin, (Defendant's exhibit 1) a description that did not fit Floyd; (6) the automobile was Diggs' and he was seen in it (Tr. at 54, 56); (7) the car did not fit the description of the getaway vehicle (Tr. at 16, 68); and (8) the car was 8 miles from the scene of the robbery (Tr. at 60). I agree with Judge Justice that these facts simply do not add up to an objective basis for suspicion.

2. *Crawford v. United States*, 59 App.D.C. 356, 41 F.2d 979 (1930), *cited in Aldridge v. United States*, 60 App.D.C. 45, 47 F.2d 407, 408, *rev'd*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931).

3. *Frasier v. United States*, 267 F.2d 62 (1959).

crime, the race of the victim, or the racial composition of the jury.[4]

The division's decision here rests on the proposition that race-prejudice questions need be asked only when there are some undefined special circumstances warranting such an inquiry.[5] That proposition blatantly misstates the principle of *King* and of the cases that have followed it, as the division itself implicitly acknowledged, 522 F.2d at 1318 n.15. The division rationalized its cavalier treatment of *King* by quoting a single sentence in the Supreme Court's subsequent decision in *Hamling v. United States,* 418 U.S. 87, 140, 94 S.Ct. 2887, 2918, 41 L.Ed.2d 590, 633 (1974).[6] The sentence in question, however, is vague and irrelevant dictum, which at most indicates that *due process* requires that race-prejudice questions be asked only in "certain situations" —a rather broad phrase—and not that the

supervisory power requirements are so "limited." The division did not even attempt to rationalize its conclusion that *King* —involving a single Negro defendant convicted of simple assault of a single white victim—presented special circumstances warranting race-prejudice voir dire, but that this case—involving three Negro defendants charged with armed robbery of a Georgetown bank and assault with a deadly weapon of five persons, including the branch manager and head teller—did not.

It was to "maintain uniformity of [our] decisions," and because I believed that the question of whether to overrule *King* was of "exceptional importance," F.R.A.P. 35, that I originally voted to grant rehearing en banc in this case. I did so realizing that "there is a limit to the number of cases we can take en banc,"[7] but also persuaded that the burden of rehearing here would not be

4. *United States v. Grant,* 494 F.2d 120, 122 & n.6 (2d Cir.), *cert. denied,* 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974); *United States v. Robinson,* 485 F.2d 1157 (3d Cir. 1973) (Selective Service case and one Government witness black); *United States v. Robinson,* 466 F.2d 780 (7th Cir. 1972) (narcotics sale with black complaining witness); *United States v. Carter,* 440 F.2d 1132 (6th Cir. 1971) (two black jurors); *United States v. Gore,* 435 F.2d 1110 (4th Cir. 1970) (possession of stolen property). *See also United States v. Bear Runner,* 502 F.2d 908 (8th Cir. 1974).

5. The division also suggested that counsel failed to preserve the issue for appeal because, after the trial judge stated, "No, I won't permit that," counsel "did no more about it, whether by way of argument or objection or otherwise," 522 F.2d at 1318, and because she did not exhaust her peremptory challenges. Since the division proceeded to the merits of the issue, I assume it did not intend to base its decision on these grounds. In any event, *King* bars a decision on the asserted failure to object, since *King* holds that "[c]ounsel could not be expected to stand on his request despite the judge's attitude," and that the failure to ask the question was plain error. 362 F.2d at 969; *see United States v. Carter, supra* note 4, at 1135; *United States v. Gore, supra* note 4, at 1111; F.R.Crim.P. 51 (abolishing exceptions). And appellant's failure to exercise all the peremptory challenges only highlights the prejudice he suffered, since without information gathered from voir dire, he could not intelligently exercise his challenges. *See Swain v. Alabama,* 380

U.S. 202, 218–19, 85 S.Ct. 824, 834–35, 13 L.Ed.2d 759, 771 (1964).

The division also suggested that the question proposed by counsel was technically defective because it did not focus on the relationship between "dealings or experience with black persons" and bias against the appellant because he was black. Again, this does not appear to be the ground on which the majority based its decisions, nor is there any evidence that the trial judge ruled on this basis. Moreover, the precise question proposed by counsel has been approved by the Fourth Circuit, *United States v. Rivers,* 468 F.2d 1355 (4th Cir. 1972), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 691 (1973). Finally, the Supreme Court has made clear that counsel's failure to submit a properly phrased question is not a waiver of the right to have a race-prejudice question posed. *See Aldridge v. United States, supra,* 283 U.S. at 310–11, 51 S.Ct. at 471–72, 75 L.Ed. at 1055–56. *See also Ham v. South Carolina,* 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46, 50 (1973).

6. Astoundingly, the division also relied upon the denial of certiorari in *Ross v. Massachusetts,* 414 U.S. 1080, 94 S.Ct. 599, 38 L.Ed.2d 486 (1973). No proposition is more settled than that a denial of certiorari is not a statement on the merits. *See, e. g., Maryland v. Baltimore Radio Show,* 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950).

7. *United States v. Agurs,* 171 U.S.App.D.C. 350, 520 F.2d 82, 83 (1975) (Statement of Leventhal, J., on petition for rehearing en banc).

great, since the teaching of *King* was so clear and clearly correct. I believed, and still believe, that the fair administration of criminal justice demanded that the division's decision be overruled, and that the Rule of Law and principled decisionmaking demanded that this appellant receive the benefit of the *King* decision.

Shortly after my vote was cast, the Supreme Court issued its decision in *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). *Ristaino* was an appeal from a First Circuit decision granting a writ of habeas corpus to a black prisoner convicted in a state court of armed robbery and assault and battery by means of a dangerous weapon with intent to murder a white security guard. The First Circuit had held that the defendant had been denied due process by the state court judge's failure to question the veniremen concerning racial prejudice.[8] The Supreme Court reversed, holding that the Constitution requires race-prejudice questions only when "there was a constitutionally significant likelihood that, absent [such] questioning . . . the jurors would not be as 'indifferent as [they stand] unsworne.' Co.Litt. 155b." 424 U.S. at 596, 96 S.Ct. at 1021, 47 L.Ed.2d at 264. The Court found that the victim's race was insufficient to create such a likelihood, and it noted that the added fact that the victim was a security officer had not been relied upon by trial counsel as an "aggravating racial factor." *Id.* at 597, 96 S.Ct. at 1022, 47 L.Ed.2d at 265.

Although eschewing a constitutional rule, the *Ristaino* Court was careful to point out that "the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant." 424 U.S. at 597, 96 S.Ct. at 1022 n.9, 47 L.Ed.2d at 265. Indeed the Court stated that "[u]nder our supervisory power we would have required as much of a federal court faced with the circumstances here." *Id.* The Court then cited *Aldridge* and decisions from two courts of appeals: *United States v. Booker,* 480 F.2d 1310 (7th Cir. 1973), and *United States v. Walker,* 491 F.2d 236 (9th Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974). In *Booker* the Seventh Circuit had held, in an opinion by Judge (now Justice) Stevens, that the failure to voir dire veniremen on race prejudice was error even when the alleged crime, a narcotics sale, was non-assaultive, and the jury included five blacks. In contrast, *Walker* holds that the failure to pose race-prejudice questions in a forgery case, while not the "better practice," was not an "abuse of discretion" where the Government's two chief witnesses and three of the jurors were black; there were no racial overtones; and counsel had failed to call Judge Weigel's attention to the fact that the judge had omitted the proposed race-prejudice question in conducting the voir dire.

Because *Ristaino* involved a state court conviction, it did not provide the Court with an opportunity to define in detail the contours of the supervisory power rule. *Ristaino* strongly suggests, however, that at the very least we are free, perhaps in the exercise of *our* supervisory powers,[9] to continue to adhere to the *King-Booker* rule as to when race-prejudice questions must be asked. *Ristaino* also suggests that we are free to apply or not apply the harmless error doctrine to failures to question jurors about their racial attitudes.[10] Thus, in my view, the questions that warranted en banc

---

8. *Ross v. Ristaino,* 508 F.2d 754 (1st Cir. 1974), *rev'd,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976).

9. *See, e. g., Griffin v. United States,* 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949); *United States v. Wiley,* 517 F.2d 1212 (D.C.Cir. 1975); *United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971) (disapproving the Supreme Court-approved *Allen* charge for trials in the District of Columbia).

10. The question of whether a failure to pose race-prejudice questions can be deemed harmless in light of either the strength of the Government's case or the racial composition of the jury has divided the circuits. *Compare, e. g., United States v. Grant, supra* note 4, *and United States v. Rivers, supra* note 5 *with, e. g., United States v. Robinson,* 485 F.2d 1157 (3d Cir. 1973) *and United States v. Booker, supra.*

consideration before *Ristaino* remain intact: (1) should *King* be overruled and if so what rule should replace it; (2) should the harmless error doctrine be applied to cases of this sort, and if so under what circumstances? By distinguishing constitutional and nonconstitutional requirements, *Ristaino* only serves to dissolve the division's sole reason for discarding *King*, namely that *Hamling* and *Ham*—due process cases—require us to do so.

If *Ristaino* in some respects leaves the reasons for rehearing unaffected, in other respects it strengthens them. After *Ristaino*, we at least owe this appellant a statement of the reasons for our decision which acknowledges rather than ignores the difference between supervisory power and constitutional requirements, and admits rather than denies that federal judges are required to pose race-prejudice questions absent the special circumstances of *Aldridge*. Moreover, we owe the appellant a principled explanation of why a person tried in federal court for committing an assault and battery by means of a deadly weapon with intent to kill a security guard would be entitled to voir dire prospective jurors concerning racial prejudice, but this appellant, who committed a "mere" armed robbery and assault with a dangerous weapon against a "mere" bank manager and four other persons is not. Since the division has elected not to issue an opinion on rehearing to take account of *Ristaino*, I believe it incumbent upon the full court to do so.

Statement of Circuit Judge WRIGHT, with whom Circuit Judge ROBINSON joins, as to why he would grant rehearing *en banc* in No. 74–1011.

I agree with Judge Bazelon that this case should be reheard *en banc*. My reasons are: (1) In my judgment the panel opinion does not accurately interpret and apply the prior opinions of this court and the Supreme Court relating to *voir dire* examinations in criminal cases where the victim of the crime and the accused are of different races.[1] (2) Since the panel opinion issued the Supreme Court handed down its opinion in *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258, 44 U.S.L.Week 4305 (March 3, 1976). *Ristaino* restates the law in this area and apparently invites inferior federal courts to act under their supervisory power.[2] Under the circumstances, to eliminate possible confusion in the District Court with respect to the empaneling of juries in criminal cases I believe it would be appropriate to use this case as a vehicle to stake out anew the law of this circuit in this area.

---

1. *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *King v. United States*, 124 U.S.App.D.C. 138, 362 F.2d 968 (1968); *United States v. Robinson*, 154 U.S. App.D.C. 265, 475 F.2d 376 (1973). *See also United States v. Booker*, 480 F.2d 1310 (7th Cir. 1973); *United States v. Walker*, 491 F.2d 236 (9th Cir.), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974).

2. *Ristaino v. Ross*, 424 U.S. 589, 597 n.9, 96 S.Ct. 1017, 1022 n.9, 47 L.Ed.2d 258, 265 n.9, 44 U.S.L.Week 4305, 4308 n.9 (1976).