UNITED STATES of America

v.

**Dale J. SCOTT, Appellant.**

No. 75–1570.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 24, 1975.

Decided Dec. 24, 1975.

Dennis M. Flannery, Washington, D. C. (appointed by this court), for appellant.

John W. Polk, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before DANAHER, Senior Circuit Judge, WRIGHT, Circuit Judge, and VAN PELT,* Senior District Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Dissenting opinion filed by Senior. District Judge VAN PELT.

J. SKELLY WRIGHT, Circuit Judge:

On December 19, 1974 appellant Dale J. Scott entered the National Bank of Washington, pushed a customer aside

---

* Of the United States District Court for the District of Nebraska, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

from a teller's window, stated in a loud voice that this was a stickup, and demanded that the teller give him money. Although he carried no weapon, one hand was thrust toward the teller with "the first finger bent with a knuckle extended" "as though he might have wanted to hold a gun or was holding a gun." Tr. 19. A scuffle with the customer ensued, and a blow from the customer knocked Scott to the floor and rendered him unconscious. He was charged in a single-count indictment with entering a bank with intent to rob, 18 U.S.C. § 2113(a) (1970), a charge requiring proof of specific intent. The jury found him guilty, and he was sentenced under 18 U.S.C. § 4208(a)(2) (1970) to not less than six years, with a recommendation that he be sent to the facility at Springfield, Missouri equipped to provide treatment for chronic alcoholics.[1]

Testimony at the trial established firmly that Scott is indeed a chronic alcoholic. That fact, coupled with his claim that he was intoxicated at the time of the incident in the bank, gave rise to the only real issue at trial: because of his alleged intoxication, did he have the specific intent to rob at the time he entered the bank? Although some witnesses testified that Scott did not appear drunk, several testified that his breath smelled strongly of alcohol. Scott himself said that he awoke early that morning, drank a half pint of gin, then a half pint of whiskey, and then a half pint of vodka. He testified that he remembered nothing from the time he finished the vodka until he came to, handcuffed to a chair at the police station.

▆▆▆ It is well established that intoxication may be so severe as to make a defendant incapable of forming the requisite specific intent. *United States v. Martin,* 154 U.S.App.D.C. 359, 362, 475 F.2d 943, 946 (1973); *Womack v. United States,* 119 U.S.App.D.C. 40, 41, 336 F.2d 959, 960 (1964) (*per curiam*); *Heideman*

*v. United States,* 104 U.S.App.D.C. 128, 131, 259 F.2d 943, 946 (1958), *cert. denied,* 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959). The question whether the defendant was sufficiently drunk to preclude specific intent is one of fact. There was ample evidence here for this factual question to go to the jury—and of course to go to the jury under proper instructions.

Scott's counsel made a timely request that the following instruction be given:

There is evidence in this case tending to show that the defendant may have been intoxicated prior to and at the time of the alleged commission of the offense with which he is charged.

Voluntary intoxication or drunkenness is not in itself a defense to a charge of crime. But the fact, if it is a fact, that the defendant may have been intoxicated at the time of the commission of the offense may negative the existence of a state of mind that is an essential element of the offense.

An essential element of the offense with which the defendant is charged is that at the time he allegedly entered the National Bank of Washington he had the specific intent to rob it. Even though the defendant may have been intoxicated to some degree, if you find that the Government has proved beyond a reasonable doubt that the defendant was capable of forming the specific intent to and had the specific intent to rob at the time he entered the bank and that the Government has proved beyond a reasonable doubt all other essential elements of the offense, you may find the defendant guilty.

On the other hand, if you find that the Government has failed to prove beyond a reasonable doubt that at the time of the commission of the alleged offense the defendant was capable for [*sic*] forming the specific intent to rob and had the specific intent to rob at the time he entered the bank, you must find the defendant not guilty.

---

1. Counsel informs us that Scott remains in D.C. Jail and has not been sent to Springfield.

The requested instruction is unassailable. It accurately states the law on intoxication and specific intent in a way not unduly favorable to the defendant. As counsel pointed out at trial, the instruction is taken directly from Instruction 5.12 of the standard "Redbook," Criminal Jury Instructions for the District of Columbia (1972 ed.).

Unfortunately the court did not give the requested instruction. Instead it submitted the question to the jury under instructions which might well have been understood as shifting the burden of proof to the defendant, and those instructions form the only issue we reach on this appeal. The court charged:

> Intoxication is not an excuse for the commission of a crime. Voluntary drunkenness is no defense to a criminal act unless specific intent or knowledge is an element of the offense; *then drunkenness may be shown to prove mental incapability to form the specific intent.*
>
> The defendant in this case contends that he was intoxicated prior to and at the time of the alleged commission of the offense for which he is charged.
>
> As previously indicated, being intoxicated is not in itself a defense to the charge of the crime. The fact, if it is a fact, that the defendant may have been intoxicated at the time of the commission of the offense, may negate the existence of a state of mind that is an element of the offense.

Tr. 160–161 (emphasis added). Defense counsel objected to the charge as delivered, referring specifically to possible prejudice on the burden of proof. Tr. 162. Nonetheless the court declined to correct or augment the instruction.

In *Edwards v. United States*, 84 U.S.App.D.C. 310, 172 F.2d 884 (1949) (*per curiam*), the trial court had delivered a charge on specific intent and intoxication susceptible to the same misunderstanding on burden of proof as the charge given here. We found that instruction erroneous, and we held:

> [W]here a specific intent is essential to the crime charged, and evidence is introduced that might create a reasonable doubt whether the defendant was sober enough to be capable of forming this intent, the jury must be instructed to acquit if they have such a doubt.

*Id.* Clearly there was evidence here that might have created a reasonable doubt as to Scott's specific intent; it was error not to give an instruction adequately apprising the jury of its duty to acquit should the case leave them with any reasonable doubt on the issue.[2]

Of course, an error may be harmless. Rule 52(a), Fed.R.Crim.P. Erroneous allocation of the burden of proof is, however, an error of constitutional dimension. *United States v. Martin, supra*, 154 U.S.App.D.C. at 364–365, 475 F.2d at 948–949. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Therefore the standard for deciding whether the error was harmless derives from *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967):

> [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

In deciding this question we are called upon to consider the instructions as a whole. *United States v. Martin, supra*, 154 U.S.App.D.C. at 363, 475 F.2d at 947.

---

2. We are mindful of the two paragraphs opening the charge on intoxication and specific intent quoted in the dissent. But the explanation which immediately follows—the three paragraphs we have set out above—is confusing and, as we have pointed out, is very much subject to the interpretation that the defendant bears the burden of proof on the issue. In view of the bizarre facts in this case, we cannot conclude that this confusing explanation was not prejudicial to the defendant. In any event, the court clearly had available the standard Redbook instruction, often approved by our cases as fairly stating the law on intoxication and specific intent—an instruction for which defense counsel had made adequate and timely written request.

Here, it is true, the court's earlier instructions quite properly indicated that the Government bears the burden of proving the defendant guilty beyond a reasonable doubt as to each element of the offense, including specific intent. There are other factors, however, which leave us with a reasonable doubt as to the harmlessness of the error. The erroneous instruction quoted above came after the correct instruction dealing generally with burden of proof, and the quoted passage was the final mention made of intoxication and specific intent before the jury retired. Moreover, the evidence of Scott's intoxication was by no means negligible; indeed, it was quite strong. *See Womack v. United States, supra; Heideman v. United States, supra.* Scott's statement that he drank excessively that morning received corroboration from several witnesses, including a police detective, who said there was the odor of alcohol on his breath. One witness stated the odor was so strong and "repulsive" that he was forced to back away from Scott in order to continue a conversation. Tr. 62. Scott's testimony is supported as well by the undisputed evidence that he is a chronic alcoholic, treated for that condition at least 18 times since 1971 at the Occoquan clinic. Tr. 102. Finally, the claim of heavy intoxication is borne out by the very nature of the alleged crime, especially the transparent pretense that he had a gun in his outstretched hand. *Contrast United States v. Martin, supra,* 154 U.S.App. D.C. at 366, 475 F.2d at 940 (error in instruction held harmless beyond a reasonable doubt; defendant's behavior belied claim of intoxication, for he had lunged six feet to inflict an accurate and nearly fatal knife wound).

For all these reasons, we are unable to conclude beyond a reasonable doubt that a properly instructed jury would have found the defendant guilty. The conviction must be reversed and the case remanded for a new trial.

*So ordered.*

VAN PELT, Senior District Judge (dissenting):

I am unable to agree with the conclusion that this case should be reversed. I am in agreement with the overall idea that if standardized instructions have been adopted or are being used in a district that a district judge should use such instructions rather than to rearrange the same as was done in this case.

The majority opinion in setting forth the charge given by the court omits two paragraphs which I deem important. The opening two paragraphs of the complained of instruction are:

Chronic alcoholism is not a defense to the crime of entering a bank with intent to rob, which is the crime charged in this indictment.

However, you are instructed that if you find Mr. Scott to be a chronic alcoholic, you may consider that fact along with the other evidence presented in this case in determining whether the Government has proved beyond a reasonable doubt that Mr. Scott was capable of forming the specific intent to rob and that he had the specific intent to rob at the time he entered the bank.

I believe the instruction thus given included all of the essential elements provided under Instruction 5.12 of the standard "Redbook," *Criminal Jury Instructions for the District of Columbia* (1972 ed.), and that it did not change or shift the burden of proof, which earlier had been placed on the Government. The above quoted portion of the instruction again definitely reminded the jury of the burden on the Government to prove "beyond a reasonable doubt" the specific intent. While the evidence of intoxication is felt by the majority to be "quite strong" it was not strong enough for the jury to believe that it prevented the forming of the necessary specific intent.

I have a good deal of sympathy for the defendant and do not approve of his incarceration for a term of years in the District of Columbia jail. I think he should have been sent to Springfield or some other federal penitentiary. Congress has placed that determination in the hands of the Attorney General, however.

At this point I should observe that I am a district judge who believes that the Circuit Courts of Appeal should on occasion exercise their authority to modify sentences. I favor, in this case, the affirmance of the conviction but would remand the case to the district judge to modify the sentence to cover incarceration for the period actually served by the defendant to date of resentence, and probation for the remainder of the term, not to exceed five years. If he is a chronic alcoholic he has certainly dried out by now.