**UNITED STATES of America**

v.

**Charles E. WIGGINS, Appellant.**

**No. 75–1622.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Argument—20 Nov. 1975.

Decided 26 Jan. 1976.

Rehearing Denied Feb. 19, 1976.

Danaher, Senior Circuit Judge, concurred in the result.

Edward L. Genn, Washington, D. C. (appointed by this Court), was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, Stuart M. Gerson, Regina C. McGranery, and Frederick A. Douglas, Asst. U. S. Attys., were on the brief for appellee.

Before DANAHER, Senior Circuit Judge, WILKEY, Circuit Judge, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

PER CURIAM:

On 27 June 1974 this court reversed by order Charles E. Wiggins' earlier conviction for the unlawful distribution of a controlled substance (21 U.S.C. § 841(a)) and remanded the case for a new trial.[1]

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. *United States v. Wiggins,* 162 U.S.App.D.C. 99, 497 F.2d 686 (1974).

On remand appellant was again found guilty of unlawful distribution by a jury sitting before the Honorable June L. Green, and he was again sentenced to imprisonment for three to nine years, to run concurrently with other sentences he is serving. Appellant now raises three points as he seeks a second reversal by this court: (1) that the trial court prejudicially erred by giving an alibi instruction when in fact appellant's defense was that no offense ever occurred at the time and place alleged; (2) that the trial court prejudicially erred in overruling objections to police records of a hearsay nature; and (3) that appellant was prejudiced by the delay between the time of the alleged offense and the time of the indictment in this case. We agree with none of the three contentions and therefore affirm the judgment of the district court.

I

In order to understand fully appellant's complaint concerning the alibi instruction, it is necessary briefly to summarize the facts of this case as they were brought out in the testimony below. At the trial an undercover officer of the Metropolitan Police Department, Peter Levi Presley, testified that he purchased two packages of heroin from Wiggins on the evening of *26 May*. According to the officer's testimony, he arrived at appellant's home at 14 T Street, Northwest, around 8:10 p. m. When he knocked on the door appellant admitted him into the house, and they stood in the vestibule for approximately five minutes. After Wiggins told Presley that he did not have any narcotics, but that he knew where he could get some, they got into Presley's car and drove to the rear of 322 Florida Avenue, Northwest. There Wiggins left Presley in the car while he went to a nearby, but undisclosed, location. When he returned to the car he sold Officer Presley two tinfoil packages for ten dollars, and Officer Presley drove him back to his home on T Street, arriving around 8:30 p. m.

At that time appellant asked Presley for a ten dollar loan so that he could purchase additional narcotics. He promised to repay the loan later that night. Instead of lending him the money immediately, Presley drove around for half an hour thinking the matter over. When he returned to Wiggins' house around 9:00 p. m., appellant answered the door and walked Presley back to his car. Inside the car Presley gave Wiggins the ten dollars and was told to come back later that night to be repaid. Between 11:00 and 11:30 p. m. Presley drove by Wiggins' house several times, but no one appeared to be home. Finally Presley gave up and returned home where he placed the two tinfoil packages in a manila envelope. On the front of the envelope he recorded information such as appellant's name and address; the time, date, and location of the sale; and a description of the envelope's contents. About two hours later, at 1:30 a. m. on 27 May, Presley gave this envelope to his control officer, Detective James J. McNamara.

McNamara testified that after performing a field test which indicated the presence of narcotics, he placed the manila envelope and its contents into a lock-sealed envelope on which he wrote the date, appellant's name and address, a description of the envelope's contents, the price of the purchase, and the name of the purchasing officer. Subsequent chemical analysis revealed that the lock-sealed envelope contained 143 milligrams of heroin mixed with quinine. After several unsuccessful trips to Wiggins' house, Presley finally found appellant at home on *30 May*. When he asked for his ten dollars appellant offered to give him three "nickel bags" (*i. e.,* five dollar bags of heroin) instead, and Presley accepted. Later, however, it was discovered that these bags did not contain narcotics.

Officer Presley did not see appellant again until he identified him in a police lineup, and then again at the trial, as the person who sold him narcotics on 26 May 1972.

Appellant and his witnesses related a quite different story. Mrs. Lucy Wiggins, appellant's aunt, testified that around 5:45 p. m. on the evening of 26 May she picked up appellant at his mother's house at 14 T Street, Northwest, and

they drove to her home at 1187 Stevens Road, Southeast. She further testified that appellant remained at her house the entire evening of 26 May and did not return to 14 T Street until 9:45 a. m. the next morning. Mrs. Bertha Darby, appellant's mother, testified that she stayed at home with three teen-age children on the evening of 26 May and remembered answering the door twice, once for "a tall fellow" whom she would not recognize again and once for a "couple of guys." All three visitors were looking for appellant, and she informed them that he was not at home.

Appellant took the stand and reiterated the testimony of his mother and aunt. He explained that his first and only contact with undercover Officer Presley came on 30 May 1972 when an associate of his, James Settles, brought Presley by his house and introduced him as "an old school chum" to whom Wiggins should sell some narcotics. Appellant further explained that he assumed Settles wanted to "burn" (*i. e.*, swindle) Presley since Settles knew that appellant did not sell narcotics. Accordingly, he went into the kitchen and cooked up three phony tinfoil packets containing milk sugar, Accent, and salt which he sold to Presley for ten dollars. After Presley left, according to Wiggins' testimony, he and Settles split the money.

## II

■ At the trial below appellant's counsel stated that "our defense was alibi" and "the only special instruction I would ask for would be the alibi instruction."[2] Then when the charge, including the standard alibi instruction, was read to the jury appellant's counsel did not object, but instead stated that he was "[s]atisfied."[3] Clearly, appellant is now precluded from assigning as error an instruction which his counsel specifically requested and approved. "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."[4] Of course, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,"[5] but there was no such error in the instant case. Moreover, an invited error generally does not require reversal, *i. e.*, appellant cannot now complain that the court gave an instruction which he requested.[6]

■ By our holding in this case we do not intend to suggest that the trial court's charge to the jury was entirely satisfactory. Defense counsel requested "*the* alibi instruction" (meaning in common parlance the standard, form book instruction), and this is exactly what he got. The court's instruction read, "There has been testimony to the effect that the defendant was not present at the time and place *when this offense was committed.*"[7] Also, the charge stated, "It is stipulated that the chemist would testify that *the material in question* was in fact heroin."[8] Appellant claims that these and several other excerpts from the court's charge "[t]aken together . . . amounted to nothing less than a denial of Mr. Wiggins' defense [that the offense never in fact occurred] and an instruction to the jury of his guilt."[9] Admittedly, the trial court should have taken the standard alibi instruction and changed its preface to reflect the defense argument that no transaction, whatsoever took place at 14 T Street, Northwest, on the night of *26 May* and to explain that defendant attempts to prove this version of the facts by submitting evidence of an alibi placing him at a different address during the time of the alleged offense. Nevertheless, the critical words "when this of-

---

2. Transcript at 95.

3. *Id.* at 110.

4. Fed.R.Crim.P. 30.

5. Fed.R.Crim.P. 52(b).

6. *See, e. g., Dennis v. United States*, 341 U.S. 494, 500 n. 2, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); *Weldon v. United States*, 87 U.S.App. D.C. 113, 116, 183 F.2d 832, 835 (1950), *cert. denied*, 343 U.S. 967, 72 S.Ct. 1063, 96 L.Ed. 1364 (1952).

7. Transcript at 103 (emphasis added).

8. *Id.* at 107 (emphasis added).

9. Brief for Appellant at 13.

fense was committed" apparently did not strike defense counsel as anything significant since he requested no correction and indicated his satisfaction with the instructions. Similarly, we conclude that these words did not affect any substantial right of the defendant. We are confident that the jury accepted the alibi instruction, as did trial counsel, to mean at the time and place the offense charged in the indictment is *alleged* to have occurred. Likewise, we are sure the jury understood that the words "the material in question" referred to the narcotics which Officer Presley turned in to his supervising officer at 1:30 a. m. 27 May and which the indictment charged appellant with selling on the night of 26 May. The chemist instruction did not require the jury to find that appellant sold "the material in question."

In another case where a defendant's trial counsel "not only failed to raise any objection to the court's charge, but [also] . . . specifically requested and urged the trial court to give the instruction now objected to," this court explained,

> In evaluating an asserted error in a portion of a jury instruction we must, of course, examine the charge as a whole to determine whether there was a likelihood of misleading the jury to the extent that it is more probable than not that an improper verdict was rendered.[10]

Our conclusions are reaffirmed when we examine as a whole the district court's charge in the instant case. Closely following the preface to the alibi instruc-

tion, which reads "when this offense was committed," the court further instructed,

> If after a full and fair consideration of all the facts and circumstances in evidence you find the Government has failed to prove beyond a reasonable doubt that the defendant was present at the time and place of the commission of the offense charged in the indictment, then one of the essential elements of the offense is lacking, and it would be your duty to find the defendant not guilty.

> The accused is not required to prove alibi but the burden is on the Government to prove beyond a reasonable doubt that the defendant was present.[11]

These additional instructions served to eliminate whatever ambiguity the preface might have created.

Appellant also asserts that under the court's definition of a knowing and intentional distribution the jury could have found appellant guilty because he admitted to an intentional transfer of a substance that looked like heroin. Again appellant is improperly focusing on a few isolated sentences and "thereby highlighting [their] special meaning and obscuring the collective impact of the jury instructions taken as a whole."[12] In any event, even in isolation these instructions did not pose the danger described by appellant. From the plain meaning of the court's instructions the jury knew that it could not find appellant guilty of distributing a controlled substance on 26 May just because he ad-

10. *United States v. Thurman,* 135 U.S.App. D.C. 184, 185, 417 F.2d 752, 753 (1969), *cert. denied,* 397 U.S. 1026, 90 S.Ct. 1269, 25 L.Ed.2d 535 (1970); *accord, United States v. Martin,* 154 U.S.App.D.C. 359, 365, 475 F.2d 943, 949 (1973) (we must "determin[e] whether the error meant the difference between acquittal and conviction.").

11. Transcript at 103–04. Similarly, other portions of the charge clearly indicate that the trial court was not directing the jury to find appellant guilty:

> Nothing that the Court has said during the course of the trial or the Court will say during this charge should carry with it any suggestion as to how the Court feels the case

> should be decided for, as I have said, you are the sole judges of the issues of fact in this case. For me to suggest how you should decide these facts or this case would constitute a wholly unwarranted assumption of your prerogatives in the case.

> The burden is on the Government to prove beyond a reasonable doubt not only that the offense was committed *as alleged* in the indictment, but that the defendant was the *person who committed it.*
>
> *Id.* at 98–99, 100 (emphasis added).

12. *Suggs v. United States,* 132 U.S.App.D.C. 337, 341–42, 407 F.2d 1272, 1276–77 (1969).

mitted to transferring a mixture of milk sugar, Accent, and salt on 30 May.

### III

█ Appellant's second and third points do not merit extended discussion. Appellant contends that the admission into evidence of the two envelopes bearing the notations of Officer Presley and Detective McNamara was reversible error. At trial appellant objected to the admission of these envelopes (1) because Presley's manila envelope was a self-serving document and (2) because McNamara's lock-sealed envelope was hearsay since it was based on Presley's out-of-court statements and notations. / Appellant now contends that these documents were objectionable because the date of 26 May 1972 appeared on both envelopes, and they therefore tended to support the government's contention that the offense occurred on that date.

We conclude that the admission into evidence of these two documents was possibly premature and at the most harmless error—no substantial rights were affected. At the time of their admission the information appearing on both envelopes had already been testified to by Officer Presley and Detective McNamara. Hence, the notations on the documents were merely cumulative evidence; they provided the jury with no new information. Moreover, after the defense presented testimony indicating that Officer Presley had a motive to fabricate the purchase on 26 May in order to get even with appellant for "burning" ·

him on 30 May, the government was entitled to introduce these envelopes in support of Officer Presley's testimony, i. e., as prior consistent statements made before the existence of any motive to fabricate.[13] The premature admission into evidence of these two envelopes is not sufficient basis for reversal.

█ Turning to appellant's third assignment of error, we find it lacking in at least two respects. First, this court has previously decided, albeit sub silentio, that appellant was not denied due process by the government's delay in securing this indictment. Appellant raised this issue in his previous appearance before this court.[14] ·In the judgment in that appeal this court stated, "While the issues presented occasion no need for an opinion, they have been accorded full consideration by the court."[15] If appellant's allegation of prejudicial delay warranted relief, this court should have dismissed the indictment at that time rather than ordering a new trial.[16] Second, even if we allowed appellant to relitigate this issue, his due process attack would fail for the lack of any showing of actual prejudice. Appellant does not contend that he encountered any difficulty in locating his witnesses or in refreshing their memories or his memory as to the events of 26 May 1972.

For the foregoing reasons the district court's judgment is

*Affirmed.*

DANAHER, Senior Circuit Judge, concurs in the result.

---

13. *See* C. McCormick, Handbook on the Law of Evidence §§ 49, 251 (2d ed. E. Cleary 1972).

14. *See* Brief for Appellant in *United States v. Wiggins,* 162 U.S.App.D.C. 99, 497 F.2d 686 (1974) at 11–12.

15. *United States v. Wiggins,* 162 U.S.App.D.C. 99, 497 F.2d 686 (1974).

16. *See Ross v. United States,* 121 U.S.App. D.C. 233, 349 F.2d 210 (1965).