UNITED STATES of America

v.

Robert L. PINKNEY, Appellant.

No. 75–2223.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 5, 1976.

Decided Aug. 10, 1976.

Ann K. Macrory, Washington, D.C. (appointed by this Court), for appellant.

Douglas J. Behr, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Carolyn R. Kleiman, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before BAZELON, Chief Judge, LEVENTHAL, Circuit Judge, and CHRISTENSEN,* United States Senior District Judge for the District of Utah.

Opinion for the Court filed by Chief Judge BAZELON.

Opinion filed by Circuit Judge LEVENTHAL, concurring in part and dissenting in part.

BAZELON, Chief Judge:

Appellant was convicted by a jury of possession of phenmetrazine with intent to distribute,[1] possession of phenmetrazine,[2] and possession of methadone.[3] After submission to the court of a report[4] finding him unsuitable for treatment under the Narcotics Addict Rehabilitation Act (NARA),[5] appellant was sentenced to prison terms of from one to three years (with a special parole term of two years) on the possession with intent to distribute count and one year on each other count, all to run concurrently.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 21 U.S.C. § 841(a) (1970).

2. 33 D.C.Code § 702 (1973).

3. 33 D.C.Code § 402 (1973).

4. The report was prepared by staff at the Federal Correctional Institution at Danbury, Connecticut, to which appellant was referred for a 60-day period of study pursuant to 18 U.S.C. § 4252 (1966).

5. 18 U.S.C. § 4251 et seq. (1966).

Finding merit to appellant's claim that the court erred in illustrating the meaning of the phrase "reasonable doubt" in its charge to the jury, we reverse the conviction for possession of phenmetrazine with intent to distribute. For the reasons discussed below, we affirm the convictions on the two possession counts and remand for resentencing.

I

After reading to the jury the standard burden of proof instruction,[6] the trial court illustrated the meaning "reasonable doubt" with the following example:

Take a young couple who are working, they have two or three children and they have a little apartment or home. They don't have too much money in the bank, but they have an automobile that is running pretty well. One day a salesman finds out the wife of this young man might be interested in a new automobile. So he gets her number and calls her up and says I would like to have you drive this new Chevrolet, I hear you might be interested in a new car.

Well, he came around the house and they went out for a ride and she fell in love with this automobile. She is ready to buy it right away, but the husband comes home at night and while having dinner, they start talking and she tells him about this automobile she had driven and would like to go and get it right away. She is just crazy about it.

The husband listens to her and he says: wait a minute, sweetheart, listen. How much money do we have in the bank? We have four or five hundred dollars, something like that; the children have to go to school this fall and they need new clothes and books and all that business.

And we haven't had a vacation for five years, you see, and she starts listening and he says, don't you think we could spend this money for some other purpose or save it for a rainy day?

You see, they are hesitating, talking about it, pausing. The husband says: Look, we have a nice automobile, it's running pretty well. Of course, we would like to have a new car but let's think about this.

You see, they are hesitating, communicating with each other. It is a reasonable doubt they have. You can take that on through a thousand examples, whether you take a trip or not, whether you get a new job or not.

Tr.T. 147–149.

We evaluate the propriety of this illustration mindful that the reasonable doubt instruction "is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' "[7] The reasonable doubt instruction "is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue[,]' " and because it "command[s] the

6. The court charged that:

The burden is always upon the Government to prove a defendant guilty beyond a reasonable doubt. Unless the Government sustains his burden and proves beyond a reasonable doubt that the defendant has committed every element of the offense or offenses charged the jury must find him not guilty.

Now reasonable doubt as the name implies is a doubt which is based on reason, a doubt for which you can give a reason to yourself. It is such a doubt as would cause a juror after careful and candid and impartial consideration of all the evidence to be so undecided that he or she cann͏ ͏ say that they have an

abiding conviction of the defendant's guilt. It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life.

Trial Transcript at 146–147 (hereinafter Tr.T.). *See Scurry v. United States,* 120 U.S.App.D.C. 374, 347 F.2d 468, 469, *cert. denied,* 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967). *See also Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150, *reh. denied,* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955).

7. *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), citing *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

respect and confidence of the community in applications of the criminal law."[8]

■ Judicial attempts to clarify the meaning of the phrase "reasonable doubt" by explanation, elaboration or illustration, as employed here, more often than not tend to confuse or mislead.[9] Thus, the jurors might well believe that for the defendant to prevail he must make out as strong a case against conviction as there was against buying the car. We think that the instruction overstates the degree of uncertainty required for reasonable doubt.[10] And by comparing the level of doubt required in a criminal prosecution to the doubt generated by consideration of the wisdom of buying this clearly unnecessary new car, the illustration tends to denigrate the "graver, more important transactions of life" concept.[11] Moreover, its stereotyped portrayal of the practical husband's patronizing attempt to talk sense into his flighty wife, trivializes the entire matter of conviction.[12]

■ Since trial counsel failed to object to this faulty instruction,[13] we must decide whether the matter constitutes plain error within the meaning of Rule 52(b)[14] of the Federal Rules of Criminal Procedure.[15]

---

8. *In re Winship, supra,* n. 7, 397 U.S. at 364, 90 S.Ct. 1068.

9. In *Holland v. United States, supra,* n. 6, 348 U.S. at 140, 75 S.Ct. at 138 (1954), the Court admonished that " '[a]ttempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury,' *Miles v. United States,* 103 U.S. 304, 312, [26 L.Ed. 481] [1881] . . . ." *See United States v. Anglada,* 524 F.2d 296, 300 (2d Cir. 1975) ("The heart of [the reasonable doubt instruction] was appropriate enough, but the somewhat confusing parable of the father and a bundle of twigs and the apparent characterization of the standard as quantitative rather than qualitative both might better have been omitted."); *United States v. Shaffner,* 524 F.2d 1021, 1023 (7th Cir. 1975) ("It is our opinion that any use of an instruction defining reasonable doubt presents a situation equivalent to playing with fire. The problem is that such an instruction is generally employed to favor one side."); *United States v. Cassino,* 467 F.2d 610, 619 (2d Cir.), *cert. denied* 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 590 (1973) (". . . hypothetical illustrations should be avoided because of the likelihood that they may divert the jury . . . ."); *People v. Shepherd,* 63 Mich.App. 316, 234 N.W.2d 502, 506 (1975) (". . . the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's conduct with the example."); *State v. Morrison,* 67 Kan. 144, 72 P. 554, 559 (1903) ("As has been often said by this court, the term 'reasonable doubt' best defines itself. All attempts at definition are likely to prove confusing and dangerous."); *State v. Robinson,* 117 Mo. 649, 23 S.W. 1066, 1069 (2d Div. 1893) ("It is difficult to explain simple terms like 'reasonable doubt' so as to make them plainer. . . . Every attempt to explain them renders an explanation of the explanation necessary."). *See also United States v. Lawson,* 507 F.2d 433, 442–443 (7th Cir.), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975).

10. *See United States v. Alvero,* 470 F.2d 981 (5th Cir. 1972).

11. *Supra,* n. 6.

12. In *In re Winship, supra,* n. 7, 397 U.S. at 364, 90 S.Ct. [1068], at 1072, the Supreme Court cautioned against "watering down" the reasonable doubt standard: "It is ·critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned."

13. Rule 51, F.R.Crim.P. provides that a party should make "known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor . . . ." Rule 30 provides that "[n]o party may assign ·as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

14. Rule 52(b) allows reviewing courts to take notice of "[p]lain errors or defects affecting substantial rights."

15. *See, e. g., United States v. Wiggins,* 174 U.S.App.D.C. 166, 530 F.2d 1018 (1976); *United States v. Martin,* 154 U.S.App.D.C. 359, 475 F.2d 943 (1973); *United States v. Powell,* 145 U.S.App.D.C. 332, 449 F.2d 994 (1971); *United States v. Moore,* 140 U.S.App.D.C. 309, 435 F.2d 113, *cert. denied,* 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 647 (1971); *McGill v. United States,* 121 U.S.App.D.C. 179, 348 F.2d 791 (1965); *United States v. Jacobs,* 134 U.S.App. D.C. 198, 413 F.2d 1105 (1969); *Scurry v. United States, supra,* n. 6.

This determination requires (1) consideration of the instructions as a whole,[16] and (2) a review of the entire record, since "strong evidence supports a finding of no prejudice."[17] And because the burden of proof beyond a reasonable doubt is "one of the fundamental components of due process,"[18] we must be able to declare a belief that any error was harmless beyond a reasonable doubt.[19]

(1) Viewing the instruction in context offers little assurance that appellant was not seriously prejudiced by the illustration. Although the court prefaced the story with a correct statement concerning the government's burden of proof,[20] the example comprises the major portion of the reasonable doubt instruction.[21] Nor was the error " 'cured by a subsequent charge' ";[22] the illustration was the final mention made of the standard of proof before the jury retired.[23] Moreover, it is likely that the jurors might have given undue weight to such a graphic example,[24] which because of its length and nonlegal character might have been more easily comprehended and remembered than the standard instruction, "resonat[ing] in the jury room as a standard of their function and responsibility."[25]

■ (2) Our review of the evidence convinces us that the error was prejudicial only with respect to the possession with intent to sell count, since appellant freely admitted possession of both the phenmetrazine tablets[26] and the methadone.[27] With respect to the possession with intent to sell count, however, the facts were largely disputed, and the evidence equivocal.[28] The government's case revolved around the testimony of three plainclothes police officers who had been riding through appellant's neighborhood in an unmarked car. Officer Pope

16. *United States v. Wiggins, supra,* n. 15 at 1021; *United States v. Scott,* 174 U.S.App.D.C. 96, 529 F.2d 338, 341 (1975); *United States v. Shaffner, supra,* n. 9 at 1023; *United States v. Martin, supra,* n. 15 at 947 (compiling cases); *Howard v. United States,* 128 U.S.App.D.C. 336, 389 F.2d 287, 291 (1967).

17. *See United States v. Martin, supra,* n. 15 at 948; *Howard v. United States, supra,* n. 16 at 291; *Cooper v. United States,* 123 U.S.App. D.C. 83, 357 F.2d 274, 276 (1966); *Scurry v. United States, supra,* n. 6 at 470.

18. *United States v. Martin, supra,* n. 15 at 948. *See In re Winship, supra,* n. 7, 397 U.S. at 364, 90 S.Ct. 1068.

19. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). *See United States v. Martin, supra,* n. 15 at 949. *See also United States v. Scott, supra,* n. 16 at 340.

20. *Supra,* n. 6.

21. The reasonable doubt instruction in its entirety appears at Tr.T. 146–149; the illustration spans pages 147–149. *Compare, e. g., United States v. Jacobs, supra,* n. 15 at 1106 ("The quoted language is but a small part of a comprehensive instruction regarding the province of the jury with respect to the evidence. Its possible effect upon the jury accordingly was diluted.").

22. *Howard v. United States, supra,* n. 16 at 291, citing *Southern Pac. Co. v. Souza,* 179 F.2d 691, 694 (9th Cir. 1950).

23. *See United States v. Scott, supra,* n. 16 at 341.

24. See *United States v. Jacobs, supra,* n. 15, in which an instruction advising the jury to consider the evidence in light of their own "experiences as citizens of this community" was criticized. The court there noted that while jurors are "not required to try to shake off their own knowledge, experiences and observations," this particular instruction, "though unintended, . . . might lead the jury to judge the evidence upon the basis of particular personal experiences rather than under the [proper] standards the court . . . set forth . . . ." *Id.* at 1107.

25. *McGill v. United States, supra,* n. 15 at 797. *See People v. Shepherd,* and other cases cited *supra,* n. 9.

26. Appellant testified that he had thrown the phenmetrazine tablets onto the ground. Tr.T. 79. When asked whether the tablets were his, appellant replied "Yes," explaining that he was "a user of narcotics." Tr.T. 80.

27. Appellant reported that he got the methadone "from the methadone clinic," and that he used it to "cure [himself] of using dope." Tr.T. 81.

28. *Compare United States v. Shaffner, supra,* n. 9 at 1024.

testified that the aborted sale [29] took place after he stopped the car and negotiated with appellant, having heard appellant call out "pink." [30] In his police crime report, however, the officer wrote that he "observed subject later identified as defendant who waved and stated something *inaudible* to me." [31] Officers McCluney and Scott also testified that they heard someone yell "pink," but neither heard the subsequent conversation between appellant and Officer Pope.[32] Appellant denied making any offer of sale.[33]

■ Thus, the evidence on the sale count was, at best, closely balanced, credibility being the primary issue.[34] Under these circumstances, we cannot say, beyond a rea-

sonable doubt,[35] that the jury's decision was not swayed by the erroneous instruction.[36] Accordingly, the conviction for possession of phenmetrazine with intent to sell is reversed. We affirm the convictions on counts two and three, for which there was conclusive evidence of guilt, and on these counts remand for resentencing.[37]

## II

The transcript of appellant's sentencing hearing raises substantial questions which we believe merit discussion, especially in view of the remand for resentencing. As indicated above,[38] appellant was referred to the Federal Correctional Institution at Danbury, Connecticut for examination to deter-

29. Officer Pope testified that appellant had agreed to sell him three pills for $20. He related that just before any exchange took place, he "took the $20 bill, put it back in [his] pocket and grabbed [appellant's] hand . . . stat[ing] 'Police' and placing appellant under arrest. Tr.T. 27.

30. Tr.T. 7. "Pink" is a street term for phenmetrazine, also referred to as "bam" or Preludin.

31. Tr.T. 24 (emphasis supplied).

32. Tr.T. 40–41, 48–49, 54.

33. Tr.T. 81.

34. *See United States v. Millings,* 175 U.S.App. D.C. 293, 296, 535 F.2d 121, 124 (1976).

35. *See Glasser v. United States,* 315 U.S. 60, 67, 62 S.Ct. 457, 86 L.Ed. 680, *reh. denied,* 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222 (1942): In all cases the constitutional safeguards are to be jealously preserved for the benefit of the accused, but especially is this true where the scales of justice may be delicately poised between guilt and innocence. Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial, since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt.

36. Judge Leventhal reads our opinion as "claim[ing] the jury was confused as to what is meant by reasonable doubt[.]" (Leventhal, J., concurring in part and dissenting in part, at 1251). Nowhere do we so state. The point is that we have no way of knowing what impact the *potentially* misleading instruction had on the minds of the jurors, and are unwilling to conjecture that it had no substantial effect. Nor are we willing to find the error non-prejudicial solely because of counsel's silence—"the

prejudice caused a defendant by error does not somehow evaporate or diminish simply because his counsel has failed to object." *United States v. Leonard and Sarvis,* 161 U.S.App.D.C. 36, 494 F.2d 955, 975 (1974) (Bazelon, C. J., concurring in part and dissenting in part), *appeal after remand,* 173 U.S.App.D.C. 228, 523 F.2d 1177 (1975). Recognizing that "[a] conviction ought not to rest on an equivocal direction to the jury on a basic issue," *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946), we are confirmed in our result by the teaching of *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), that serious doubts as to whether a defendant was prejudiced by trial defects should be resolved in the defendant's favor.

37. Where the appellate court could only speculate as to what sentence the trial court would have imposed absent consideration of a count upon which the conviction or sentence is later vacated, a remand for resentencing on the remaining, valid counts is appropriate. *See United States v. Moore,* 176 U.S.App.D.C. 309, 312, 540 F.2d 1088, 1091 (1976), and cases cited therein, n. 22.

We note also that our disposition in this case obviates the problem created by the dual sentencing under both federal and D.C. statutes (counts one and two) for essentially the same offense. *See United States v. Moore,* 176 U.S. App.D.C. 309, 540 F.2d 1088 (1976); *United States v. Jones and Bryant,* 527 F.2d 817 (1975); *United States v. Shepard,* 169 U.S.App.D.C. 353, 515 F.2d 1324 (1975); *United States v. Knight,* 166 U.S.App.D.C. 21, 509 F.2d 354 (1974).

38. *Supra,* p. —— of 179 U.S.App.D.C., p. 1242 of 551 F.2d.

mine whether he was eligible for NARA treatment. In a letter addressed to the trial court, the Danbury staff recommended against such treatment. The letter reads, in pertinent part:

> [Mr. Pinkney] was introduced to heroin through peer group association and has used other drugs including cocaine and bam. Investigative reports indicate recent use of amphetamines during the month of February and March of 1975.
>
> Mr. Pinkney has been motivated to observe our therapeutic drug program. He indicates no desire to participate in such a drug program and indicates that the group counseling sessions are too intense for him. Our staff has observed his limited participation in our program and it is our finding that Mr. Pinkney is a drug addict as defined by law. It is also found that Mr. Pinkney is not likely to be rehabilitated through treatment because of his limited motivation to participate in a drug program at this time. He admits that he is a drug addict having used drugs for several years. We recommend that you consider sentencing him as a regular adult offender with the recommendation that he participate in a drug abuse program.

At sentencing, trial counsel reported that he had gone over the presentence report and discussed the matter with the Probation Office representative.[39] He devoted the remainder of his statement to an acknowledgment of what to all parties seemed apparent—that appellant's addiction caused him to be before the court[40]—and to a plea that the court place his client on probation.[41]

When asked whether he had read the NARA report, counsel replied, "I have not read it, Your Honor."[42] The court proceeded to read portions of it aloud. Appellant himself then attempted to explain why NARA treatment did not suit him:

> Your Honor, I had turned that program down because the program was geared for high intensity—with hooping and hollering, you know, and it messed my nerves up. I have a bad nervous condition, which you can check. I have never been around nothing like that. I tried to explain it to the man.[43]

Counsel, apparently unaware of these conflicts over the treatment regimen, offered nothing more on appellant's behalf before sentence was imposed.

Finding upon these facts substantial questions as to the representation afforded

---

**39.** Sentencing Transcript 1 (hereinafter S.T.). It is clear from the record, therefore, that the report was made available to counsel.

**40.** Counsel recognized that "[t]he reality is that it is his narcotic addiction which has brought [Pinkney] here before this Court." S.T. 2.

Appellant himself explained:

> Your Honor, I have been coming back and forth before this court for a long time for crimes and most of it was due to drugs and I am a little tired of using drugs because I know if I continue to use it I will wind up in jail or dead, and I don't wish to be anyone [sic] of these places.

S.T. 3.

Counsel for the government offered the following:

> The community also, it appears, would have a right to insist that the defendant make an effort, an effort which he perhaps is unable to make on his own. It would appear there are facilities available for individuals to work if they really want in an attempt to cut a habit which from all indications and from many reports is a very difficult thing to do, particularly on one's own.

S.T. 4.

Such acknowledgment also came from the judge, who noted: "Now, I agree with counsel. I think [Pinkney's] problem is use of narcotics, he needs treatment. . . ." S.T. 6.

**41.** Counsel informed the court that

> Mr. Pinkney feels that he will able to deal with his narcotics problem on his own, subject of course to a structured environment that might be provided if the Court would see fit to place him on probation. He understands, of course, that he would have to be under the supervision of an agency such as the Bureau of Rehabilitation or something comparable, that he would be subjected to intensive urine surveillance, that he would have to maintain employment and that he would certainly have to stay out of any further trouble.

S.T. 3.

**42.** S.T. 4.

**43.** S.T. 6.

appellant, we asked appellate counsel to consider whether the record reveals sufficient indicia of ineffective counsel at sentencing to warrant our remanding the record for supplementation, the procedure adopted in *United States v. DeCoster.*[44] While DeCoster dealt with counsel's pretrial and trial preparation, rather than his performance with respect to sentencing, we held that as a general rule, "[c]ounsel should be guided by the American Bar Association Standards for the Defense Function." [45]

We have repeatedly acknowledged that defendants are constitutionally entitled to the effective assistance of counsel [46] at sentencing,[47] but we have neither articulated specific duties owed by counsel to client at this stage of the proceedings nor defined the contours of that right.[48] While the remand for resentencing here renders unnecessary further consideration of the ineffective assistance of counsel issue,[49] we think it appropriate, in the exercise of our supervisory power over the administration of criminal justice in this circuit,[50] to chart

**44.** 159 U.S.App.D.C. 326, 487 F.2d 1197, 1204–1205 (1973)

**45.** *United States v. DeCoster, supra* n. 44 at 1203, referring to the American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Defense Function (App. Draft 1971). *See also United States v. Johnson,* 155 U.S.App.D.C. 28, 475 F.2d 1297, 1300 (1973); *United States v. Martin, supra* n. 15 at 945 (Bazelon, C. J., dissenting).

In addition to enunciating this general rule in *DeCoster,* we also specified certain duties owed by counsel to client. *Inter alia,* "[c]ounsel should confer with his client without delay and as often as necessary [with respect to] matters of defense . . . should discuss fully potential *strategies and tactical choices with his* client. . . . [c]ounsel should promptly advise his client of his rights and take all actions necessary to preserve them. . . . [c]ounsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *United States v. DeCoster, supra* n. 43 at 1203–1204.

**46.** *I. e.,* "[a] defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." *Id.* at 1202 (footnote omitted).

**47.** *United States v. Lucas,* 168 U.S.App.D.C. 251, 513 F.2d 509, n. 4 (1975); *United States v. Johnson, supra,* n. 44 at 1300; *Gadsden v. United States,* 96 U.S.App.D.C. 162, 223 F.2d 627, 630 (1955). *See Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

**48.** Two of the cases cited above, *United States v. Lucas and Gadsden v. United States, supra,* n. 47, involved the insufficient representation *at sentencing afforded by substitute counsel.* In the third, *United States v. Johnson, supra,* n. 45, we addressed, without deciding, the issue of ineffective assistance where counsel remained silent while the defendant was improperly sentenced, after explaining that he mistakenly believed that his client wished to have different counsel represent him at that point. In none of

these cases did we offer any guidelines for counsels' performance at sentencing. *But see United States v. Martin, supra,* n. 15 at 954–956 (Bazelon, C. J., dissenting).

**49.** In *United States v. DeCoster, supra,* n. 44 at 1201, we stated that the record on appeal "poses more questions about counsel's preparation and investigation than it answers." Accordingly, we remanded the record for a supplemental hearing on counsel's preparation and investigation, and gave leave to appellate counsel to file a motion for a new trial on remand.

Within the sentencing context, however, this procedure may be unduly cumbersome. Therefore, whenever in future cases the record on appeal presents a question of counsel's conformance to the sentencing standards adopted herein, a remand should be ordered. In the interest of administration, the preferred course is for the trial court to then hold an entirely new sentencing hearing. A new and complete record of the resentencing, assuring that counsel's preparation and performance met the adopted standards, would of course be required. In those instances, however, where the trial judge believes that the overall interest of justice, including judicial administration, would be furthered by instead conducting a hearing to probe the efforts originally made by defense counsel in connection with the *initial* sentencing hearing, this procedure may be employed.

**50.** The Supreme Court has recognized the supervisory power of the federal appeals courts, *see Barker v. Wingo,* 407 U.S. 514, 530, n. 29, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as well as its own supervisory power. *See, e. g., Fay v. New York,* 332 U.S. 261, 287, 67 S.Ct. 1613, 1627, 91 L.Ed. 2043, *reh. denied,* 332 U.S. 784, 68 S.Ct. 27, 92 L.Ed. 367 (1947) ("Over federal proceedings we may exert a supervisory power with greater freedom to reflect our notions of good policy than we may constitutionally exert over proceedings in state courts, and these expressions of policy are not necessarily embodied in the concept of due process"); *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608,

the course counsel should follow on remand, and to implant the specificity necessary to give content to the standards adverted to in *DeCoster.* In so doing, it is not our intention to indicate necessarily that the defendant's representation was unconstitutionally inadequate under established minimum standards. But we believe that when marginal problems are implicit in remanded cases our supervisory aim should be for performance that leaves no room for close questions.

We note at the outset that the first step toward assuring proper protection for the rights to which defendants are entitled at sentencing is recognition by defense counsel that this may well be the most important part of the entire proceeding. As the American Bar Association observed: "It is unfortunately too often the case that the defense attorney considers his job completed once he has assisted the defendant through the guilt phase of the proceedings. . . ." [51] In order to properly fulfill his responsibilities, counsel's energies and resources should be directed as fully to the dispositional phase of the proceedings as to pretrial preparation and courtroom advocacy.

▪ The record here [52] also suggests that counsel should:

(1) Familiarize himself with all reports serving as a foundation for sentence sufficiently in advance of the sentencing hear-

---

613, 87 L.Ed. 819, *reh. denied,* 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727 (1943) ("Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence.")

For cases in this circuit in which such power has been exercised, *see United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177, 1186, 1187 (1971); *Tate v. United States,* 123 U.S. App.D.C. 261, 359 F.2d 245, 252 (1966). *See also United States v. Wiley,* 170 U.S.App.D.C. 382, 517 F.2d 1212, 1218 (1975) ("In addition to constitutional commands, the federal appellate courts are governed in their decisionmaking by the statutory directive of 28 U.S.C. § 2106 that they shall dispose of appeals in the interest of justice. This permits and indeed counsels protection of sound and substantial interests of the accused even when they do not rise to the level of constitutional protections.") (footnote omitted); *United States v. Floyd,* 175 U.S.App.D.C. 337, 535 F.2d 1299, 1301 (1976) (statement of Bazelon, C. J., as to why he would grant rehearing en banc).

For cases recognizing the supervisory power over sentences and sentencing procedures, *see Yates v. United States,* 356 U.S. 363, 366–367, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958); *United States v. Wiley,* 278 F.2d 500, 503 (7th Cir. 1960). *See also United States v. Holder,* 412 F.2d 212, 215 (2d Cir. 1969); *Russell v. United States,* 288 F.2d 520, 524–525 (9th Cir.), *cert. denied,* 371 U.S. 926, 83 S.Ct. 296, 9 L.Ed.2d 234 (1962); *Thomas v. United States,* 368 F.2d 941, 946–947 (5th Cir. 1966). *Cf. United States v. Hopkins,* 174 U.S.App.D.C. 244, 531 F.2d 576 (1976); *Scott v. United States,* 136 U.S.App. D.C. 377, 419 F.2d 264 (1969).

**51.** American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Proce-

dures, Commentary to § 5.3(a), p. 241 (App. Draft 1968).

For similar comments on the inadequate attention devoted to sentencing by defense attorneys and the need for an expanded view of counsel's role and responsibilities see, *e. g.,* Krantz et al., Right to Counsel in Criminal Cases: *The Mandate of Argersinger v. Hamlin* 186–187 (1976); Amsterdam, Segal & Miller, Trial Manual for the Defense of Criminal Cases §§ 460–471 (3d Ed. 1974); National Advisory Commission on Criminal Justice Standards and Goals, Report on Corrections, Commentary to § 5.18, p. 193 (1973); Frankel, Criminal Sentences: Law Without Order 37 (1972); Kuh, *For a Meaningful Right to Counsel at Sentencing,* 57 A.B.A.J. 1096 (1971); Portman, *The Defense Lawyer's New Role in the Sentencing Process,* 34 Fed.Prob. 3 (1970); Miller, *The Role of Counsel in the Sentencing Process,* in 2 Criminal Defense Techniques § 40.05 (Cipes ed. 1969); Steffes, "Advocacy Fully Achieved," in *Symposium: The Role of Counsel at Sentencing,* 23 Legal Aid Brief Case 190, 200 (1965); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 19 (1967). *See also, United States v. Martin, supra,* n. 15 at 956 (Bazelon, C. J., dissenting).

**52.** Imposition of these duties derives from our review of counsel's performance as reflected in the sentencing transcript before us. They are minimum standards, and purport to be neither comprehensive nor exhaustive.

*Cf. United States v. DeCoster, supra,* n. 43 at 1203, n. 23, where we noted that "[t]he duties articulated herein are meant as a starting point for the court to develop, on a *case by case* basis, clearer guidelines for courts and lawyers as to the meaning of effective assistance." (Emphasis supplied.)

ing, assuming access to such reports at this time.[53] An attempt to verify the information contained therein would then enable counsel to supplement the reports when incomplete, and challenge them when inaccurate.[54] This duty is recognized by the American Bar Association in its Standards for the Defense Function: [55]

Defense counsel should present to the court any ground which will assist in reaching a proper disposition favorable to the accused. If a presentence report or summary is made available to the defense lawyer, he should seek to verify the information contained in it and should be prepared to supplement or challenge it if necessary.[56]

It is axiomatic that this duty extends to familiarization with *all* reports upon which disposition may be based.[57]

A reading of the NARA report here would have alerted counsel to appellant's perception of, and related unreceptiveness to, the Danbury program as being "too intense for him." Armed with such knowledge, counsel would have been able to conduct a proper exploration of alternative programs more suited to appellant's needs, and to present the products of his search at the sentencing hearing.[58]

(2) Counsel should confer with his client during the presentence period, keeping him fully informed of the dispositional alternatives, and their implications, and ascertaining the client's views. Section 8.1(a) of the American Bar Association Standards for the Defense Function specifically requires that "[t]he consequences of the various dispositions available should be explained fully by the lawyer to his client." [59] Counsel's

---

**53.** A presumptive rule favoring the disclosure of presentence reports is now in effect. *See* Rule 32(c)(3)(A), F.R.Crim.P. (effective Dec. 1, 1975). Proper preparation requires that counsel have adequate time. *United States v. De-Coster, supra,* n. 43 at 1204, n. 31. Although in the case before us the presentence report was filed with the court several months before sentencing, and the NARA report 16 days before, we recognize that counsel's ability to prepare sufficiently in advance of the sentencing hearing may depend on when these reports are submitted to the court.

**54.** *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Bass,* 175 U.S. App.D.C. 282, 535 F.2d 110, 119 (1976).

**55.** As adopted in *United States v. DeCoster, supra,* n. 43 at 1203.

**56.** ABA Standards for the Defense Function, *supra,* n. 44 § 8.1(b). Similarly, the ABA Standards Relating to Sentencing Alternatives and Procedures, *supra,* n. 49 § 5.3(f)(iii) provides:
(iii) The attorney should satisfy himself that the factual basis for the sentence will be both adequate and accurate, and that the record of the sentencing proceedings will accurately reflect relevant circumstances of the offense and characteristics of the defendant which were not disclosed during the guilt phase of the case:
(A) If the attorney has access to the presentence report, this duty should at a minimum involve verification of the essential bases of the report and amplification at the sen-

tencing proceeding of parts which seem to be inadequate. The attorney should also take proper steps to controvert any inaccuracies in the report.
See also Miller, *supra,* n. 49 § 40.05[1].

**57.** *E. g.,* NARA reports, 18 U.S.C. § 4252; Federal Youth Corrections Act reports, 18 U.S.C. § 5010(e); Juvenile Delinquency proceedings reports, 18 U.S.C. § 5034; reports on mental incompetency submitted prior to the imposition of sentence, 18 U.S.C. § 4244.

**58.** At oral argument, appellate counsel was able to identify at least two such drug rehabilitation programs in the District of Columbia— Last Rennaissance and Second Genesis. For other alternatives *see* Government of the District of Columbia, Office of Criminal Justice Plans and Analysis, Office of Crime Analysis, *Offender Services in the Washington Metropolitan Area* (1973).

**59.** Likewise, the ABA Standards Relating to Sentencing Alternatives and Procedures, *supra,* n. 49 § 5.3(f)(ii) provides:
The attorney should explain the consequences of the likely sentences to the defendant and assure himself that the defendant understands the nature of the sentencing proceeding. The attorney should ascertain the views of his client once such information has been conveyed[.]
See also Miller, *supra,* n. 49 §§ 40.01[3], 40.07; President's Commission on Law Enforcement and Administration of Justice, *supra,* n. 49 at 20.

duty to consult his client in other contexts is well established;[60] the knowledgeable participation of the defendant with respect to sentencing is certainly no less critical.[61]

In light of all the circumstances, it appears doubtful that counsel sufficiently consulted with his client or otherwise knew enough to raise for consideration alternative services or facilities, if any, to suit appellant's needs.

\* \* \* \* \* \*

■■■ Counsel's functions and responsibilities at sentencing are not easily defined—it has been said that "nowhere in the criminal justice process is there more confusion as to what specific role counsel has or is qualified to play than in sentencing."[62] It is at least clear, however, that counsel should be prepared to present to the court all the factors and circumstances necessary to ensure "a reasonably meaningful hearing on sentence."[63] This is essential in order for trial judges to discharge their own duty "to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts."[64]

So ordered.

LEVENTHAL, Circuit Judge (concurring in part, dissenting in part):

I join in Part II of the majority opinion, remanding for resentencing on counts 2 and 3:

On count 1, I would remand for resentencing, and dissent from reversal for a new trial.

I do not believe the difficulty with the reasonable doubt charge is plain error warranting reversal in the absence of objection at trial. The opinion claims the jury was confused as to what is meant by reasonable doubt. Its message to trial judges is to parrot a few abstractions that are well and good for appellate opinions but not really enlightening to jurors. Every time a trial judge gives examples of what might cause reasonable men to hesitate to act, it is possi-

60. It is generally recognized that the decisions to plead guilty, waive a jury trial and forego appeal require the participation of the accused. *See* Comment, *Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest,* 54 Calif.L.Rev. 1262, and cases and statutes cited therein at 1268 (1966). We also require the participation of the defendant where counsel seeks to waive trial on all issues except insanity, *United States v. Brown,* 138 U.S.App.D.C. 398, 428 F.2d 1100 (1970); where the right to be present at trial is forfeited, *Cross v. United States,* 117 U.S.App. D.C. 56, 325 F.2d 629 (1963); where counsel stipulates that his client had a prior felony conviction, the effect of which would be to increase the maximum imprisonment, *Jackson v. United States,* 95 U.S.App.D.C. 328, 221 F.2d 883 (1955); and where a waiver of the right to testify is at stake, *Poe v. United States,* 233 F.Supp. 173 (D.D.C.), aff'd, 122 U.S.App.D.C. 163, 352 F.2d 639 (1965). *See also United States v. Moore,* 174 U.S.App.D.C. 113, 529 F.2d 355, 358 (1976). *Cf. Haziel v. United States,* 131 U.S.App.D.C. 298, 404 F.2d 1275, 1278 (1968).

61. In order for counsel to properly discharge his duty to keep his client fully informed, he must, of course, first educate himself as to the alternative sentences. Counsel's duty to explore alternative sentencing dispositions is emphasized in both the ABA Standards for the Defense Function, *supra,* n. 44 §§ 8.1(a), 8.1(b)

and the ABA Standards Relating to Sentencing Alternatives and Procedures, *supra,* n. 49 §§ 5.3(f)(i), 5.3(f)(v). *See also* Krantz et al., *supra,* n. 49 at 186; Amsterdam, Segal & Miller, *supra,* n. 49 § 463; National Advisory Commission on Criminal Justice Standards and Goals, *supra,* n. 49 § 5.18(3)(b); Miller, *supra,* n. 49 § 40.06[2]; President's Commission on Law Enforcement and Administration of Justice, *supra,* n. 49 at 19–20.

We recognize the difficulties that may be confronted by defense counsel in endeavoring to reconcile the expressed wishes of his client, however unworkable, with sound rehabilitative practices. We are also mindful of the difficulty of making a record of the details and nuances of attorney-client discussions. The record must, however, contain enough to afford more assurance of meaningful presentence collaboration than is evident here.

62. Miller, *supra,* n. 49 § 40.01[1]. *See also* Kadish, "The Advocate and the Expert—Counsel in the Peno-Correctional Process," 45 Minn. L.Rev. 803, 805 (1961); *United States v. Martin, supra,* n. 15 at 956 (Bazelon, C. J. dissenting).

63. *United States v. Dinapoli,* 519 F.2d 104, 108 (6th Cir. 1975).

64. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

ble for someone—certainly appellate counsel—to show that this specific instance does not adequately define the universe of important transactions. I would be readier to join if the majority adopted Judge Pell's suggestion that the best thing to do is merely to state that the government has the burden of proving guilt beyond a reasonable doubt, without adding another word. *United States v. Lawson,* 507 F.2d 433 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1974).

The charge before us is not as objectionable as that in the *Scurry* case, where the trial judge instructed it was enough for conviction if the jury would be willing to act on such evidence in the important affairs of life. Yet that was held not plain error warranting reversal in the absence of trial objection. *Scurry v. United States,* 120 U.S.App.D.C. 374, 347 F.2d 468, *cert. denied,* 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967). Here if anything the trial judge was even more favorable to the defendant than the law requires, as a matter of logic and syntax. For his instruction overall communicated the impression that there was reasonable doubt if there was enough doubt about a matter to prompt hesitation and discussion, whereas the law is that even where a situation is well worthy of pause and discussion, there may be a conclusion of guilt beyond a reasonable doubt, if after such discussion the jurors would not hesitate to act.

What counts is the impact of the charge taken as a whole. I do not think it plain that this charge resonated in the courtroom overall as permitting a conviction even though jurors would have hesitated to act in the important affairs of life. If defense counsel had presented an objection, the trial judge would have promptly clarified matters to avoid any possible ambiguity. If the problems—discerned by the majority—had been perceived by defense counsel or the trial judge they could have been avoided. It seems unlikely to me that they steered the jury away from the explicit message that the trial judge was impressing on the jury to be fair to defendant, and not to

convict if there was a kind of doubt that would cause them to hesitate to act in a matter they considered important.