UNITED STATES of America

v.

James EATON, Appellant.

No. 85–6205.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1986.

Decided Jan. 13, 1987.

James Steward Kurz, Washington, D.C., for appellant.

Robertson T. Park, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Betty Ann Soiefer, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before SILBERMAN and WILLIAMS, Circuit Judges and JAMESON,* Senior District Judge.

Opinion for the Court filed by Senior District Judge JAMESON.

JAMESON, Senior District Judge:

James Y. Eaton has appealed his conviction, following a jury trial, of possession with intent to distribute phenmetrazine (preludin), in violation of 21 U.S.C. § 841(a). The district court denied his motion for a new trial. We affirm the conviction.

### I. BACKGROUND

On July 9, 1985, several officers of the Washington, D.C. Metropolitan Police Department, entered the residence of co-defendant Martha McCollum.[1] The officers found three persons in the residence— McCollum, Eaton, and an unidentified male. Through the open door they observed Eaton sitting on a couch two to three feet from a radiator. The officers testified that they saw Eaton toss away a pink tablet, which they later recovered. The tablet had the marking "BI–62," indicating a 75 mg. phenmetrazine tablet. Two plastic baggies on the radiator were found to contain 300 "BI–62" phenmetrazine tablets.

Based on observations through the open door, a search warrant was obtained. The police recovered large amounts of heroin and cocaine, as well as cutting materials, paraphernalia, and several thousand dollars in cash, including the marked bills used by police officers in the undercover cocaine purchase from McCollum. Evidence recovered during the search indicated that McCollum lived in the house. The evidence also established that a person named Joe Brown had links to the house. Nothing, however, other than Eaton's presence, connected him to the house.

Based on the evidence obtained, Eaton was charged by indictment with possession with intent to distribute phenmetrazine, possession with intent to distribute heroin, and possession with intent to distribute cocaine, all in violation of 21 U.S.C. § 841(a). The jury found Eaton guilty of a single count of possession with intent to distribute phenmetrazine.[2]

### II. CONTENTIONS ON APPEAL

Eaton contends that (1) the court's instruction on constructive possession misstated the law and substantially prejudiced Eaton; (2) the prosecution's cross-examination of Eaton on his arrest record exceeded the permissible scope of examination; and (3) the prosecution should not have been permitted to cross-examine Eaton on his prior drug use.

### III. STANDARD OF REVIEW

All of the issues raised by Eaton relate to the conduct of the trial. These matters are committed to the sound discretion of the trial court. *United States v. Soulard,* 730 F.2d 1292, 1303 (9th Cir.1984) (choice of language for and formulation of instruc-

---

* Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. A police officer had made an undercover purchase of cocaine from McCollum for $45.00 in pre-recorded police funds. Following the sale, McCollum was observed in front of the resi-

dence. As the officers approached her, she backed into the open doorway.

2. Co-defendant McCollum entered a plea of guilty prior to trial. Co-defendant Brown was acquitted on all counts, and Eaton was acquitted on the heroin and cocaine counts.

tions is within the trial court's discretion); *United States v. Elders*, 569 F.2d 1020, 1026 (7th Cir.1978) (scope and extent of cross-examination is within the trial court's discretion). We use the abuse of discretion standard in reviewing the trial court's rulings on these issues.

## IV. CONSTRUCTIVE POSSESSION INSTRUCTION

■ Eaton argues that the court's illustrations given in conjunction with its constructive possession instruction confused the jury on the requirement that one must have both the power and the intention to exercise dominion and control over an object to have constructive possession. The instruction given reads as follows:

The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession. [holding up a pencil] *I'm in actual possession of this pencil right now.*

A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion and control over a thing, either directly or through another person or persons, is in constructive possession.

I'm in constructive possession of my television set in my house. [pencil is now on desk] *I am also in constructive possession of this pencil, even though I don't hold it in my hand any more. I can reach it, I can get to it.*

The law also recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole.

If two or more persons share actual or constructive possession of a thing, possession is joint.

Mere presence in the vicinity of a piece of property or mere knowledge of its physical location does not constitute possession.

The illustrations, to which Eaton objected at trial, are underlined.

Apart from the illustrations, the instruction given is the standard instruction on constructive possession. District of Columbia Standard Jury Instructions (3d ed. 1978), No. 3.11. Absent the illustrations, there is no question that the instruction accurately states the law on constructive possession. *See United States v. Pardo,* 636 F.2d 535 (D.C.Cir.1980); *United States v. Watkins,* 519 F.2d 294 (D.C.Cir.1975); *United States v. Holland,* 445 F.2d 701 (D.C.Cir.1971); *United States v. Bethea,* 442 F.2d 790 (D.C.Cir.1971). The question here is whether the illustrations, which were added to the instruction, could cause the jury to disregard the element of intent and focus only on proximity.

Appellant relies primarily on *United States v. Pinkney,* 551 F.2d 1241 (D.C.Cir. 1976), where this court held that the trial court's illustration given in conjunction with an instruction on reasonable doubt "overstate[d] the degree of uncertainty required for reasonable doubt." *Id.* at 1244. We find *Pinkney* distinguishable. There, the illustration was much more extensive than the instruction given in this case.[3]

The *Pinkney* illustration consisted of six paragraphs and followed a correct instruction on reasonable doubt. Here, the illustrations were short and intertwined with a proper instruction. Immediately before the illustrations, the court instructed the jury

---

3. The illustration in *Pinkney* related to an extended discussion by members of a family as to whether they should purchase a new car, resulting in a *decision not to do so.* In holding that it was plain error to illustrate the reasonable doubt required in criminal prosecution by comparing it to doubt generated by consideration of the wisdom of buying the new car, the court said in part: "Thus, the jurors might well believe that for the defendant to prevail he must make out as strong a case against conviction as there was against buying the car. We think that the instruction overstates the degree of uncertainty required for reasonable doubt. And by comparing the level of doubt required in a criminal prosecution to the doubt generated by consideration of the wisdom of buying this clearly unnecessary new car, the illustration tends to denigrate the 'graver, more important transactions of life' concept." 551 F.2d at 1244. (footnote omitted).

that constructive possession requires both the power and the intention to exercise dominion and control over an object. Three sentences after the illustrations, the court instructed the jury that mere presence or knowledge does not constitute possession. Although standing alone, the illustrations might mislead the jury as to the requirements for constructive possession, when read in conjunction with the instruction as a whole, the illustrations could not mislead the jury so as to warrant reversal. The district court's use of the illustrations was not an abuse of discretion.

## V. PROPRIETY OF CROSS–EXAMINATION

Eaton next argues that the district court erred in permitting the Government, over defendant's objections, to inquire into (1) the specific circumstances of Eaton's plea agreement in a prior conviction; and (2) Eaton's prior use of drugs.

### (A) Circumstances of Prior Conviction

■ During the direct examination of Eaton, his counsel inquired into a 1985 conviction on charges of receiving stolen property. Eaton acknowledged the charges. Defense counsel than asked whether Eaton pleaded guilty to the charges or stood trial. Eaton replied, "I pleaded. I was guilty." The clear purpose of this line of questioning was to imply that Eaton acknowledges his guilt when he is in fact guilty and that if he were guilty in the present case he would have pleaded guilty. On cross-examination, the Government sought to rebut this inference by inquiring into the particulars of Eaton's plea agreement. After a bench conference, the court allowed the Government to proceed with inquiry into the circumstances surrounding the plea agreement. The cross-examination revealed that pursuant to the plea agreement, the prosecution had dropped several burglary charges and a charge of carrying a dangerous weapon.

### (B) Prior Drug Use

■ The Government sought to cross-examine Eaton on his prior drug use because it perceived a general theme in Eaton's testimony that he lacked knowledge of or familiarity with drugs. The court agreed that Eaton's testimony gave the impression that he was unfamiliar with drugs and allowed the Government to cross-examine Eaton concerning his prior drug use and his familiarity with drugs. Cross-examination resulted in Eaton's denial of any prior drug use and association with drugs or drug users.

Later, Eaton's attorney discovered that Eaton had perjured himself with respect to his prior drug use and association with drugs. Counsel properly advised the court. The court allowed counsel to recall Eaton to the stand. In his testimony during the recall, Eaton admitted to having previously used drugs and having familiarity with phenmetrazine.

Eaton contends that the cross-examination on Eaton's prior conviction and prior drug use was unfairly prejudicial. We agree with the district court that Eaton's direct examination opened the door for the Government's cross-examination and hold that the court did not abuse its discretion in allowing the Government's cross-examination.

Both the challenged lines of inquiry involve what has been called "bad acts" evidence. Rule 404(b) of the Federal Rules of Evidence prohibits the use of other bad acts to prove bad character and conforming conduct. Such evidence, however, is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Rule 404(b) is read in light of Rule 403. *United States v. James*, 555 F.2d 992, 999 (D.C.Cir.1977). Rule 403 precludes the introduction of otherwise admissible evidence where "its probative value is substantially outweighed by the danger of unfair prejudice."

In *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir.1982), the court addressed the question of whether the circumstances of a prior conviction could be used to rebut the same type of direct testimony as was given in this case. The court held that there was no need to determine whether the circumstances of the prior conviction might be

unfairly prejudicial because the defendant brought the prior conviction into the case during his direct examination. *Id.* at 1110. "[H]aving opened the subject in his direct testimony, [the defendant could] not object to the Government's subsequent inquiries into the relevant aspects of his prior conviction." *Id.*

In *Bailleaux,* as in this case, the Government inquired into the defendant's prior conviction to rebut the inference that the defendant would have pleaded guilty to the charged offense if he were in fact guilty. We agree with the holding in *Bailleaux.* Having relied on the circumstances surrounding the prior conviction to infer his responsible character, Eaton cannot claim that the Government was precluded from fully developing those circumstances on cross-examination to rebut that inference. Any resulting prejudice is due to Eaton's tactical error—not a misapplication of the rules of evidence. The district court did not abuse its discretion in allowing the cross-examination.

The Government's cross-examination on Eaton's prior drug use and familiarity with drugs was also a result of Eaton's testimony during direct examination. As the district court correctly noted, Eaton's direct testimony "was calculated to create the impression that he was ignorant of, or at least inexperienced with, narcotics use." As with the circumstances surrounding the prior conviction, Eaton opened the door for inquiry into his alleged inexperience with drugs and drug use.

Knowledge is an element of the offense charged. *See United States v. Freeze,* 707 F.2d 132, 135–36 (5th Cir.1983). In addition, evidence of knowledge is one of the express exceptions to the general prohibition of bad acts evidence. Fed.R.Evid. 404(b). Eaton's testimony addressed the knowledge element. The Government had a right to rebut that evidence through cross-examination. The Government's inquiry cannot be unfairly prejudicial, because the defendant himself is responsible for bringing the subject into evidence. Moreover, the balancing of probative value and prejudicial effect is left to the sound discretion of the trial court. We agree with the district court that the prejudicial impact of Eaton's prior drug use did not substantially outweigh its probative value. *See United States v. Harrison,* 679 F.2d 942, 948 (D.C.Cir.1982).

## VI. CONCLUSION

We hold that (1) the court's jury instruction on constructive possession, taken as a whole, did not mislead the jury so as to warrant reversal; and (2) the court correctly found that the defendant "opened the door," permitting the prosecution to admit evidence of the circumstances of his prior guilty plea and evidence of his prior drug use.

*Affirmed.*