986 F.2d 546
 300 U.S.App.D.C. 83
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Cecil T. JOSEPH, Appellant.
 No. 91-3277.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 24, 1993.
 
 Before MIKVA, Chief Judge, and SILBERMAN and KAREN LeCRAFT HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was heard on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). On consideration thereof, it is
 
 
 2
 ORDERED AND ADJUDGED that appellant's conviction is affirmed and the request for a new trial is denied.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b).
 
 MEMORANDUM
 
 4
 On November 18, 1990, at the Washington D.C. bus terminal, Agent Crispino of the Immigration and Naturalization Service (INS) and Detective Beard of the Metropolitan Police Department boarded a bus that had just arrived from New York City. The two officers asked passengers to identify their bags. When no one claimed one blue bag sitting in the overhead rack directly above appellant's seat, the officers took it to the front of the bus, searched it and discovered a large quantity of narcotics and a .38 pistol. The bag also contained a Bugle Boy shirt, a cassette, some AA batteries and a matchbook from a hotel with a Fayetteville, North Carolina address.
 
 
 5
 Joseph was wearing a Bugle Boy shirt similar to the one the officers found in the bag and he had a Walkman that could have played the cassette and used the batteries. The officers had also previously heard Joseph tell the bus driver he was going to Fayetteville. When the officers ordered Joseph off the bus, Joseph took with him a tan bag that had been sitting on the overhead rack next to the blue one.
 
 
 6
 Once Joseph was off the bus, the officers asked him if he was a United States citizen. When he said he was not, they asked him to produce his green card. He stated that he had only a photocopy of the card, fumbled through his wallet and could not produce it. The officers then arrested Joseph. Later, at the police station, the officers searched the tan bag and a jacket Joseph was wearing. In one jacket pocket, they found torn pieces of paper which fit together (as pieces of a puzzle would) with other pieces of paper found in the blue bag. They also found a piece of paper towel with the same design as two paper towels found in the blue bag.
 
 
 7
 We conclude that the officers conducted a valid Terry stop when they ordered Joseph to leave the bus. The police may stop and briefly detain a person for investigative purposes if they reasonably believe that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). The police, however, "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.' " United States v. Sokolow, 490 U.S. 1, 7 (1989). The blue bag was on the rack above Joseph's seat. Joseph was wearing a shirt similar to the one in the bag. He possessed a Walkman that could have used the batteries and played the tapes in the bag, and the police had previously heard Joseph tell the bus driver he was going to Fayetteville. In light of these facts, we think the officers clearly had reasonable suspicion to make a Terry stop. Moreover, they did not exceed the bounds of a Terry stop by ordering Joseph, who could have been armed,[1] to leave a bus filled with passengers. See, e.g. United States v. Tavolucci, 895 F.2d 1423 (D.C.Cir.1990); United States v. Laing, 889 F.2d 281 (D.C.Cir.1985).
 
 
 8
 Once off the bus, Joseph admitted that he was not a United States citizen and that he was carrying only a photocopy of his green card rather than the original. After quickly searching his wallet, however, he could not produce it. The officers then arrested him. Probable cause to make an arrest may be deduced from the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). Under 8 U.S.C. § 1304(e) it is a misdemeanor for an alien over 18 to fail to carry his registration with him. Because Joseph did not produce that document when given a brief opportunity to do so, the officers had probable cause to arrest him for failing to carry his registration.[2] The evidence tying Joseph to the blue bag also provided the police with probable cause to arrest him for possession of narcotics and a firearm.
 
 
 9
 We also find no error in the search of Joseph's jacket at the police station. Because Joseph was still wearing the jacket, he could have destroyed evidence hidden in it. Thus, the search of the jacket constituted a valid search incident to the arrest. See United States v. Chadwick, 433 U.S. 1, 4 (1977). Joseph also challenges the search of his tan bag at the station. That search turned up maps of the Fayetteville area and some matches similar to those found in the blue bag. Because Joseph did not initially challenge this search in his motion to suppress, he is foreclosed from raising this claim now. See Fed.R.Crim.Pro. 12(b)(3); United States v. Mitchell, 951 F.2d 1291 (D.C.Cir.1991). Even if Joseph could bring this claim, any error committed in conducting that search would be harmless in light of the other strong physical evidence linking Joseph to the blue bag. United States v. Lacy Stock, 948 F.2d 1299 (D.C.Cir.1991). Accordingly, we reject Joseph's fourth amendment claims in their entirety.
 
 
 10
 Joseph's first trial for possession of narcotics with intent to distribute ended in a hung jury. At the second trial, the government introduced the testimony of Detective Beard. In evidentiary hearings, Beard stated that he had received treatment for alcohol abuse a few months before Joseph's trial. He also admitted that, before treatment, his periodic drinking binges caused him to suffer occasional blackouts. The district court relied on this court's holding in United States v. Sampol, 636 F.2d 621, 667 (1980), that a defendant cannot use evidence of drug addiction to attack a witness's credibility and capacity to observe unless the defendant can establish "a foundation showing either that the witness was using drugs at the time he observed the events in dispute ... or that he is under the influence of narcotics while testifying...." Because there was no evidence that Beard had been drinking the night of Joseph's arrest or that he was drinking during Joseph's trial, the district court refused to allow Joseph to cross-examine Beard regarding any effects his drinking had on his perception and recollection of the arrest.
 
 
 11
 We need not decide here whether Joseph established the necessary foundation under Sampol or whether a strict reading of Sampol impermissibly limits the defendant's Sixth Amendment rights because we find that any failure to admit evidence of Detective Beard's alcoholism was, at most, harmless error in this case. We would note, however, that it is unclear why the prosecution felt compelled to use Beard as a witness in the first place. The prosecution had to have been aware that Beard potentially could be exposed to damaging questioning about his alcoholism. Agent Crispino, who boarded the bus and apprehended Joseph with Beard, also testified at the trial so that Beard's testimony was for the most part cumulative. Moreover, the government had ample circumstantial evidence linking Joseph to the bag, including the torn pieces of paper and the paper towel found in Joseph's jacket, the similar Bugle Boy shirts and the batteries and cassette for a Walkman.
 
 
 12
 Likewise, once Beard took the stand, we do not see how the prosecution could have expected to pose a line of questioning designed, as it admits, to leave the impression that Beard's alcoholism did not undermine his job performance without subjecting Beard to cross-examination on this point. Having opened the door to this type of questioning, the prosecution could not then object when the defense pursued it. See United States v. Eaton, 808 F.2d 72, 75 (D.C.Cir.1987).
 
 
 13
 Nonetheless, the failure to allow cross-examination on this issue was harmless error. Agent Crispino's testimony coupled with the physical evidence, including the pieces of paper found in Joseph's coat, leave no doubt in this court's mind that a jury would have found the defendant guilty beyond a reasonable doubt even without Detective Beard's testimony. See Chapman v. California, 386 U.S. 18, 23 (1967); Lacy Stock, 948 F.2d at 1302. Accordingly, we uphold Joseph's conviction and deny his motion for a new trial.
 
 
 14
 It is so ordered.
 
 
 
 [1]
 The officers had already found a handgun in the blue bag
 
 
 [2]
 Later, at the station, a more thorough search of Joseph's wallet produced a photocopy of his green card